WHEELING & L. E. RY. v. LEWIS RUPP.

1. RAILROAD HELD TO INVITE CONSIGNEE'S EMPLOYES TO UNLOAD FREIGHT, WHEN.

Where a railroad company delivers a car of freight over one of its side tracks to the consignee for unloading, which track however is on the property of the consignee, it will be deemed to have invited the employes of the consignee to enter the car for the purpose of removing the freight; and where one of the employes is injured by reason of the failure of the railroad company to place and secure the car in a proper manner, the railroad company is liable therefor.

2. JURY WARRANTED IN FINDING CAR BRAKES IMPROPERLY SET, WHEN.

The jury is warranted in finding that the brakes on a freight car had not been properly set, or became loosed through the fault of the company, where the evidence shows that while the car was being unloaded on a siding it started down the track, and there is no evidence to show that the brakes had been tampered with either before or after the consignee's employes started to unload the car.

ERROR to Lucas common pleas court.

**Seiders & Monnette,** for plaintiff in error:

Negligence. *Lamb* v. *Boyd,* 2 Circ. Dec. 672 (4 R. 499); *Burdick* v. *Cheadle,* 26 Ohio St. 393 [20 Am. Rep. 767]; *Bailey* v. *Gas Co.* 2 Circ. Dec. 656 (4 R. 471).

**O. S. Brumback,** for defendant in error.

## HAYNES, J.

In this case a petition in error was filed for the purpose of reversing the judgment of the court of common pleas in an action wherein Henry Rupp was plaintiff and the receivers of the railroad company were defendants, and which resulted in a verdict and judgment against the receivers of the railroad company. It was a personal injury case. It appears that the Toledo Tinware Manufacturing Company, a corporation, was carrying on business on Buckeye street in this city, near the main line of the Wheeling & Lake Erie railroad track. The railroad company had built a track out to the building which was occupied by the tinware company, they retained the title to the track and the control of it; the track, however, was built upon the land of the tinware company; the railroad company received freight from the tinware company and carried freight to it. The receiving and carrying freight was done by setting cars upon this side track at a door of the building of the tinware company, from whence the freight was loaded or unloaded,

Railway v. Rupp.

as the case might be, by some arrangement—the arrangement was, that the tinware company should load and unload the freight. The railroad company set the car upon the track, securing it there. The track itself was somewhat inclined from the building towards the main track, quite a little descent, so much so that the car would not stand upon the track without being secured by a brake or otherwise. At the time of the accident, the railway company—the receivers—had set in upon this side track a car loaded with tin for the tinware company. It was a box car, and was secured by setting the brakes upon the car. One of the witnesses thought perhaps they had blocked it, others not. The weight of the testimony seems that they had not. Just how long the car had been in there is not quite definite, some say the day before and some the same day. Probably it was there the day the accident occurred.

The manager of the tinware company opened the door and proceeded to unload the freight, and while doing so the car started upon the incline—started to go down. The plaintiff, who was an employe of the tinware company was then in the car. When the car got down to the main track it jumped the track and perhaps turned over. The plaintiff jumped from the car and landed upon a pile of stone and his foot was injured; he sprained it. At any rate the ligaments were badly sprained, but no bones broken. Thereupon he brought this suit. It went to the United States circuit court, thence to the United States circuit court of appeals, and finally got back here again, and was tried in the court of common pleas of this county to a jury. The jury returned a verdict for the plaintiff on which judgment was entered; and it is to reverse that judgment that the case is in this court.

The controversy in this case, the contention as between counsel for the plaintiff in error and defendant in error, relates very largely to the theory upon which the case was tried in the common pleas court; and has resulted in a very learned and able discussion of the legal questions involved in the case. It is claimed on behalf of the plaintiff in error that the receivers are not liable; that if any person is liable at all, it is the tinware company on a liability to its employe to furnish him a safe place to work; that if there was any defect in the manner in which the car was set, or if it was insecure in any way, the liability resulting from the negligence in that respect is upon the tinware company, the master, for failing to have examined, seen and known that the place where the men were working was secure.

It is claimed further that the position of these parties, the receivers and the tinware company, toward each other, the relations of these

parties, would be substantially that of landlord and tenant; that is to say, the railway company owning the cars, the tinware company would sustain the relation of person who was permitted to enter the car and do some work for itself; and that if it invited its men to work in the car, the tinware company alone would be responsible and not the railway company, citing the case of *Burdick* v. *Cheadle*, 26 Ohio St. 393 [20 Am. Rep. 767] and other cases along that line. In other words that there was no privity of contract between the receivers of the railroad company and the plaintiff in this case, and counsel have made a very able argument upon those questions. There were some minor questions in the case that have been touched upon in the argument, but it is not necessary to refer to them here.

Now we are called upon to decide as to the character of this employment and the relations between these parties. It seems to us from a very careful consideration of this case that the situation is substantially this; and not otherwise: The railway company was carrying its freight and placing its car alongside of that building; it was placing its car there to be unloaded. If it had taken its freight to the freight depot, it might have unloaded it itself, probably would, but by custom, or by arrangement between these parties, the consignee, the tinware company, was to unload this car, and in doing so, it was to enter upon the car and take out the freight. The expectation of the company was and must have been that the tinware company would, by its servants and agents, perform this work—largely of course, by its servants; and we do not see how the conclusion can be resisted that these men in the employ of the tinware company went into this car to remove and did remove this freight, under the invitation and by the consent of the railway company that they should do so. They were not trespassers there, —nothing of that kind—nor was the tinware company, as we conceive it, in any way tenants of that car; they went in there to perform their work, for the benefit, of course, of themselves, and for the benefit of the railway company, because, as a matter of course, the railway company wanted the freight discharged and the use of the car, and wanted their pay for the transportation. So that in our judgment, the cases that have been cited by learned counsel that have been so ably argued do not apply to this case. We think the case is simply and properly one where the car was placed there and the parties in the employ of the tinware company went in to perform their work, upon the invitation of the railway company. And without discussing the cases that may bear upon this question, we think the law of the land is, that the railway company, under those circumstances, if it fail in the performance of

Railway v. Rupp.

any duty towards these men, is liable; that if it failed to place that car at this point and secure it in a proper manner so that it became insecure and passed down the line of the road, then that it was the fault of the company, for which it would or might be liable to the employes of the tinware company who worked in this car, for injuries arising from such negligence.

There was some question as to the manner in which the car was placed at this point, a question as to whether it was properly secured. There seems to be no evidence here that the brakes were out of order in any way. The men testified that they took it down and set the brakes and left the car. It did not appear that the brakes had been changed or tampered with in any way before or at the time the men went in there to work, discharging the freight. But at some time during the performance of the work the car was noticed to start; persons outside saw it start and ran towards it, but the car had so much weight and so much headway that it could not be stopped; and it would seem to be a fair and just conclusion in the case, and one at which the jury might properly arrive that the brakes had in some manner become loosened, failed to hold, had not been properly set and failed to perform their duty; and that the car went down the track, without any negligence on the part of the tinware company or the man in the car.

Now with that state of facts, that theory of the law, we hold that the charge of the court was correct and the verdict of the jury might be sustained by the evidence. There is no contention on the part of counsel for plaintiff in error, but what on the theory of the plaintiff below and the theory of the court of common pleas, that the charge was full and complete, and the case seems to have been well presented to the jury by the court.

It is suggested that the verdict is too large. But it appears from the testimony of physicians that was offered by the defendant below that he experienced that sprain,—it may be called an injury that at any rate was serious. One of the ligaments of the ankle or foot seemed to have been very badly sprained, and while there is some improvement, there is practically no hope for complete recovery. The man walks with the aid of a cane. The physicians think he might some time be able to walk without the aid of a cane, but will never be able to do any heavy work; that he will always be troubled with that foot; it will be an infirmity; and under all the circumstances of the case, we are inclined to let the verdict of the jury stand as it is.

The judgment of the court of common pleas will be affirmed without penalty.

**Hull** and **Parker, JJ.,** concur.